UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WAYNE EARL LaFOUNTAIN,

        Plaintiff,                   Case No. 1:10-cv-943

v.                                   Honorable Robert J. Jonker

SHIRLEE HARRY et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Wayne Earl LaFountain presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Kinross Correctional Facility, though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF), the Lakeland Correctional Facility (LCF), and the Michigan Reformatory (RMI). He sues MCF Warden Shirlee Harry, MCF Resident Unit Manager Brett J. Barbier, MCF Assistant Deputy Warden Sharon K. Wells-Finos, LCF Assistant Deputy Warden Dan Hawkins, Deputy Warden Bonita Hofner, LCF Captain (unknown) Cooley, and RMI Warden Carmen Palmer.

Plaintiff has been a frequent litigator in the federal system.[1] He filed a complaint in the Eastern District of Michigan in 2001, complaining about second-hand smoke, that ultimately was settled. *See LaFountain v. William Martin et al.*, No. 5:01-cv-60011 (E.D. Mich.) (Ord. of Dismissal July 11, 2006). Shortly thereafter, Plaintiff was transferred to the Kinross Correctional Facility. Plaintiff was transferred to MCF in September 2003, where he filed numerous grievances against corrections officer Anthony Martin before his transfer in December 22, 2005. In January 2005, Plaintiff initiated another action about second-hand smoke at the Kinross Correctional Facility. *See LaFountain v. Metrish et al.*, 2:05-cv-13 (W.D. Mich.) The 2005 case was settled within one month of the 2001 case. *See id.* (Ord. of Dismissal Aug. 4, 2006). Plaintiff asserts that the settlement agreement included an agreement that Plaintiff be transferred to LCF.

---

[1] Plaintiff has filed a total of sixteen cases in this Court and three cases in the Eastern District of Michigan. In the instant opinion, the Court limits its discussion of Plaintiff's prior litigation to the cases that Plaintiff alleges are relevant to the facts underlying the instant complaint.

Plaintiff was transferred to LCF in September 2006. He alleges that he was placed in a non-smoking room in a housing unit occupied by prisoners 50 years of age and older. According to Plaintiff, in January 2007, LCF Defendant Hawkins began to place young, primarily black, "contumacious" prisoners in the same unit. (Compl., ¶ 6, Page ID#8.) Plaintiff contends that the placements were made in retaliation for Plaintiff's filing of an action against MCF corrections officer Anthony Martin on January 25, 2007. *See LaFountain v. Anthony Martin*, No. 1:07-cv-76 (W.D. Mich.).[2][3] Plaintiff repeatedly complained to various LCF officials about problems with the new prisoners, including excessive noise and the use of bright lights until very late hours. Plaintiff eventually filed grievances against Defendants Hawkins, Hofner and Cooley in September 2007, alleging that Defendants had engaged in a practice of racially discriminatory enforcement of housing rules. On September 28, 2007, Defendants Hawkins and Hofner ordered that Plaintiff be transferred back to MCF. Plaintiff packed his property, including his typewriter, and unidentified third-shift officers took possession of it. Plaintiff complains that he did not receive his typewriter with the rest of his property and that, when the typewriter arrived, it was in pieces, which cost Plaintiff $280.00 to repair. Plaintiff alleges that Hawkins, Hofner and Cooley intentionally withheld the typewriter as an act of retaliation, though he does not suggest that they personally broke it.

When he arrived at MCF on September 28, 2007, Plaintiff talked to Defendant Barbier, advising him that the transfer had been retaliatory and requesting transfer back to LCF. His request was denied. Plaintiff was placed in a cell with Jimmy Riley, a prisoner long known to

---

[2] Plaintiff's action against Anthony Martin remains pending in this Court, notwithstanding Martin's death on July 10, 2010.

[3] Shortly thereafter, Plaintiff filed a habeas corpus petition challenging a misconduct conviction that resulted in the loss of good-time credits. *See LaFountain v. Howes*, No. 1:07-cv-264 (W.D. Mich.). The action was dismissed on June 12, 2007 for failure to raise a meritorious federal claim. *See id.* (Mem. Op. & J. June 12, 2007).

Plaintiff and to others at MCF as being mentally ill. Plaintiff also was given a top bunk, though he purportedly had a permanent bottom-bunk accommodation that was issued in 1996 because of an ankle problem. Plaintiff alleges that Riley engaged in aberrant behavior: keeping cell lights on until 3:00 a.m.; playing the television at loud volume; typing and shuffling papers loudly; wearing a heavy, winter coat, wool hat and sunglasses at all times, shadow-boxing around the cell and in the showers; and making insults and threats to Plaintiff. Defendants Barbier and Wells-Finos denied Plaintiff's request for a cell move and indicated that the bottom-bunk accommodation would be honored only if an MCF doctor issued it. Plaintiff filed a grievance on October 2, 2007, alleging that his placement with prisoner Riley and his denial of a bottom bunk were retaliatory and the product of racially discriminatory selective rules enforcement.

On October 3, 2007, Riley threw Plaintiff's wash cloth into the wastebasket. Plaintiff was given an extra wash cloth. Riley continued to curse and threaten Plaintiff. That same date, Plaintiff informed corrections officer Hallowell that he intended to refuse to cell with Riley any longer. Plaintiff asked Hallowell to obtain permission from Defendant Barbier to have Plaintiff's property secured in the MCF property room. Barbier authorized that the property be secured, but issued Plaintiff a ticket containing two misconduct charges for being out of place and disobeying a direct order. Plaintiff took his property to the property room. As he walked back to the housing unit, officer Anthony Martin allegedly blocked his path and, when Plaintiff told Martin that Plaintiff intended to win his civil-rights action against Martin, Martin issued another misconduct charge for insolence, of which Plaintiff ultimately was found not guilty. When he arrived at his housing unit, Plaintiff refused to return to the cell with Riley. Defendants Barbier and Wells-Finos ordered that Plaintiff be placed in temporary segregation. During the eight days that he remained in temporary

segregation, Defendants Wells-Finos and Harry allegedly directed each shift officer to issue Plaintiff a direct order to return to his cell. When he refused, Plaintiff was issued another misconduct ticket. Plaintiff received a total of twelve misconduct tickets.

On October 8, 2007, a third-shift officer ordered that Plaintiff be placed in a bottom bunk in a cell other than that occupied by Riley. Plaintiff complied. However, twenty minutes later, a team of MCF officers arrived, hand-cuffed Plaintiff, and returned him to segregation until after the misconduct hearing had taken place. On October 7 and 9, 2007, Plaintiff was found guilty of the misconduct charges. As the result of the convictions, Defendant Harry revoked 500 days of Plaintiff's earned good-time credits, and, after Plaintiff arrived at RMI, Defendant Palmer revoked an additional 270 days. Plaintiff alleges that the revocations were disproportionate and that Defendants Harry and Palmer, as black females, engaged in racially discriminatory conduct.

Plaintiff was transferred to RMI on October 11, 2007. Plaintiff was transported with a black prisoner, Scott Bradley, who had refused to cell with another prisoner. Bradley, however, was not issued multiple misconduct tickets. Plaintiff alleges that Bradley's disparate treatment is evidence of Defendants' retaliatory and racially discriminatory selective enforcement of prison rules.

In addition, Plaintiff alleges that Defendant Barbier and the MCF hearings investigator Barbara Brinkman failed to provide the hearings officer with a copy of Plaintiff's bottom-bunk accommodation from 1996. Plaintiff also alleges that Brinkman failed to obtain answers to Plaintiff's interrogatories to various officers and prisoners. In addition, Plaintiff alleges that the hearing officer refused to consider his defenses of vindictive prosecution, selective enforcement, entrapment and duress.

Plaintiff claims that Defendants deprived him of due process at his misconduct hearings. He also alleges that Defendants Harry, Wells-Finos and Barbier used his placement in the cell with Riley to entrap him into violating a direct order and incurring multiple misconduct tickets, ostensibly in retaliation for the exercise of his First Amendment right to file a lawsuit and grievances and because he was white. Plaintiff contends that Defendants Harry and Palmer deprived him of his 770 days of good-time credits on the basis of the retaliatory and discriminatory misconducts, in violation of the First Amendment and the Equal Protection Clause.

For relief, Plaintiff seeks compensatory and punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Property Claim

Plaintiff asserts that his typewriter was damaged during his transfer from LCF to MCF. He broadly suggests that Defendants Hawkins, Cooley and Hofner were responsible for the destruction of his property.

To the extent that Plaintiff intends to raise a procedural-due-process challenge to the loss of his property, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the

deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent or intentional acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due-process claim will be dismissed.

### B. Misconduct Convictions

Plaintiff challenges the results of multiple misconduct hearings, which he alleges were retaliatory, discriminatory, and in violation of due process. Plaintiff contends that Defendants filed the retaliatory and discriminatory misconducts in a conspiracy to deprive him of 770 days of special good-time credits.

Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No.

98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges). Moreover, where a prisoner alleges that misconduct charges were falsely filed for a retaliatory or discriminatory purpose, the claim also necessarily implies the invalidity of the misconduct conviction. *See Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003) ("Norwood cannot evade *Heck*'s bar on § 1983 challenges . . . by labeling his cause of action a retaliation claim"); *Ruiz v. Bouchard*, 60 F. App'x 572, 574 (6th Cir. 2003) (claim of retaliatory filing of misconducts is barred by the prisoner's conviction on the misconduct charge); *Clemons v. Cook*, 52 F. App'x 762, 763 (6th Cir. 2002) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'") (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)); *cf. Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008) (holding that in a case of an alleged retaliatory assault, a First Amendment claim may not necessarily imply the invalidity of the prisoner's misconduct conviction for assault because the prisoner could have been found to have used more force than was necessary to protect himself).

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is necessarily affected. *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The *Muhammad* Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Muhammad*, 540 U.S. at 754. Under Michigan law, the nature of good-time or disciplinary credits depends on when the offense was committed. According to

MICH. COMP. LAWS § 800.33(2), an eligible prisoner[4] who committed his offense before April 1, 1987 receives an automatic sentence reduction for any month in which he has not been found guilty of a major misconduct, and the amount of that reduction increases from five days per month in the first two years of the sentence to fifteen days per month for the twentieth year and beyond. In contrast, a prisoner who committed his offense on or after April 1, 1987 loses five days of disciplinary credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33(3). In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.*

In *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), the Sixth Circuit concluded that the disciplinary credit system that applied to Thomas, who offended after April 1, 1987, was not a good-time program within the meaning of *Edwards*, 520 U.S. at 646, and *Muhammad*, 540 U.S. 754-55, because the program would not necessarily – only potentially – affect the length of a prisoner's sentence. *Thomas*, 481 F.3d at 440 (citing *Dotson*, 544 U.S. at 82 (holding that where the best a prisoner could obtain in a civil rights action was a new parole hearing, the result was not *Heck*-barred because such a result would not necessarily imply a shorter sentence)). As a consequence, the Sixth Circuit held that prisoners who committed their offenses on or after April 1, 1987 were not barred by the *Heck-Edwards* doctrine from seeking relief in a civil rights action before their misconduct

---

[4]Eligibility to earn good-time credits is subject to additional limitations, depending on the date and nature of the offense. Plaintiff's only active sentence is for first-degree criminal sexual conduct, MICH. COMP. LAWS. § 750.520b. He was sentenced to 45 to 70 years on September 5, 2004, for offense conduct that occurred on April 1, 1982. First-degree criminal sexual conduct is a Proposal B offense as identified in MICH. DEP'T OF CORR., Policy Directive 03.01.100, Att. A. Under MICH. DEP'T OF CORR., Policy Directive 03.01.100(E)(2)(a), if a Proposal B offense is committed between December 10, 1978 and January 1, 1983, the prisoner may be granted good-time credits only on the maximum term, though he may be eligible to receive disciplinary credits on the minimum term, as described in MICH. DEP'T OF CORR., Policy Directive 03.01.101, and MICH. COMP. LAWS. § 800.33.

convictions had been overturned.[5] *See Nali v. Ekman*, No. 08-1599, 2009 WL 4641737, at *2 (6th Cir. Dec. 9, 2009) (noting that *Thomas* required a court applying the *Heck* bar to consider whether the offense was committed before or after April 1, 1987).

However, as this Court has previously decided, *Thomas*, is inapplicable to Plaintiff's challenges to his misconduct convictions and loss of good time. *See LaFountain v. Coleman et al.*, No. 1:09-cv-623 (W.D. Mich. Jan. 21, 2010), *aff'd* No. 10-1207 (6th Cir. Dec. 10, 2010). Plaintiff's offense was committed on April 1, 1982. He therefore is entitled to good-time credits against his maximum sentence. *See* MICH. DEP'T OF CORR., Policy Directive 03.01.100(E)(2)(a). Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

---

[5]The *Thomas* court's reasoning is highly questionable. Contrary to the *Thomas* court's conclusion, the statute provides that disciplinary credits "*shall* be deducted from a prisoner's minimum *and maximum* sentence in order to determine his or her parole eligibility date *and discharge date*." MICH. COMP. LAWS § 800.33(3) (emphasis added). Disciplinary credits therefore necessarily affect a prisoner's maximum release date – his length of sentence. *See Thompson-Bey v. Stapleton*, 558 F. Supp. 2d 767, 773 (E.D. Mich. 2008) (questioning the reasoning of *Thomas*). The impact on both parole eligibility and maximum sentence is identical to the interest in issue in *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), in which the Supreme Court concluded that the good-time system would "inevitably affect the duration of the sentence."

Moreover, the reasoning of *Thomas* undermines the basis for the Supreme Court's basic conclusion that misconduct convictions that result in the loss of state-created good-time credits implicate a liberty interest protected by due process. *See Wolff*, 418 U.S. at 557-58. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). As a result, if the *Thomas* court is correct in holding that the disciplinary credit system employed by the MDOC does not "inevitably affect," *Sandin*, 515 U.S. at 487, the length of the prisoner's sentence, then no prisoner governed by the disciplinary credit system reviewed in *Thomas* has a liberty interest subject to the protections of due process.

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ CCC (effective June 29, 2009). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2). If Plaintiff is unsuccessful in the circuit court, he could then apply for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court. *See* MICH. CT. R. 7.203(B), 7.301. If he is not successful in the state courts, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[6]

It is not clear whether Plaintiff has exhausted his remedies in the state courts. However, he does not allege that he sought to overturn his misconduct convictions in a habeas petition. Moreover, his allegations make clear that his misconduct convictions have not been invalidated. Accordingly, Plaintiff's claims against Defendants Harry, Barbier, Wells-Finos, and Palmer based on the misconduct charges and the loss of good-time credits are not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

---

[6]As previously discussed, a misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff*, 418 U.S. at 556-57. A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

### C. LCF Defendants

1. Retaliation

Plaintiff alleges that LCF Defendants Hawkins, Cooley and Hofner retaliated against him for filing a civil rights complaint by allowing younger, noisier prisoners into the unit with older, quieter prisoners. He further contends that, when he filed a grievance about the selective enforcement of housing rules, the LCF Defendants transferred him back to MCF. He also alleges that Defendants Hawkins, Cooley and Hofner delayed the transfer of his typewriter and ultimately delivered it in a damaged form.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff, however, cannot show that his transfer from LCF to MCF was an adverse action taken against him for filing a

grievance about the failure to enforce prison policies against the newer prisoners. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, 630 F.3d at 474.

Plaintiff's transfer was from one level II facility to another level II facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 474; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer. He therefore fails to state a claim of retaliation based on the transfer, as such a transfer is not sufficiently adverse.

In addition, Plaintiff's wholly conclusory allegations fail to demonstrate a causal connection between the filing of his grievances about prison rule enforcement and either his transfer or the breaking of his typewriter. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Although in some circumstances, close temporal proximity between the protected conduct and adverse action may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004); *see also Iqbal*, 129 S. Ct. at 1949-50 (conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983); *Twombly*, 550 U.S. at 555. "Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was significant enough.'" *Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010) (quoting *Muhammad*, 379 F.3d at 417-18).

Here, Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive. Plaintiff has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a lawsuit or filed grievance about the placement of other residents in the unit and the enforcement of prison rules. Defendants Hawkins and Hofner, as Deputy Wardens, undoubtedly were the subject of innumerable grievances

about the management of the prison, as was Defendant Cooley, a Resident Unit Manager. Moreover, Plaintiff does not allege that any of the Defendants made comments or took other actions against Plaintiff personally that could suggest a retaliatory motive. Absent such allegations, the mere fact that a prisoner was transferred and that his property was delayed or damaged during transfer falls far short of demonstrating that the named LCF Defendants intentionally engaged in retaliation. Instead, Plaintiff's theory rests on a complex series of allegations about his litigation efforts over a period of ten years, building inference upon inference, to suggest that Defendants were part of an overarching conspiracy to retaliate against him. Such allegations "permit the court to infer [no] more than the mere possibility of misconduct," not that misconduct is "plausible." *Iqbal*, 129 S. Ct. at 1950. Accordingly, Plaintiff's speculative allegations fails to state a retaliation claim.

2.     Race Discrimination

Plaintiff also broadly alleges that the LCF Defendants engaged in racial discrimination by selectively enforcing prison housing-unit rules based on the race of the prisoner. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

"Sometimes the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination. To address this problem, courts have developed the doctrine of selective enforcement." *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996), *quoted in Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show that the challenged enforcement "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005); *Gardenhire*, 205 F.3d at 318. To demonstrate selective enforcement, the plaintiff must prove "'that the [defendant] intentionally singled him out for punishment because of membership in a protected group or the exercise of a constitutionally protected right." *Gardenhire*, 205 F.3d at 318-19 (internal citations omitted).

Plaintiff fails entirely to allege facts that showing that he was singled out for punishment on the basis of his race. Plaintiff's complaint contains no allegation that Plaintiff personally was subjected to the imposition of rules to which similarly situated black prisoners were not subjected. Instead, Plaintiff alleges only that the housing rules regarding excessive noise and bright lights were not always effectively enforced against certain younger, black prisoners. Plaintiff has no freestanding constitutional interest in the enforcement of prison rules against others; he only

has the right not to be personally discriminated against the enforcement of such rules. Plaintiff's allegations therefore far short of demonstrating purposeful discrimination.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     March 16, 2011            /s/ Robert J. Jonker
                                                             ROBERT J. JONKER
                                                              UNITED STATES DISTRICT JUDGE