UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WAYNE EARL LAFOUNTAIN,

                Plaintiff,                Case No. 1:10-cv-943

v.                                            Honorable Robert J. Jonker

SHIRLEE HARRY et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. Following review under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), in an opinion and judgment issued March 16, 2011, the Court dismissed the action for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Plaintiff appealed the dismissal, and, in an opinion and judgment issued May 22, 2013, the court of appeals affirmed in part, reversed in part, and vacated in part this Court's decision, and it remanded the case for further proceedings consistent with its opinion. Mandate issued on June 13, 2013.

Upon due consideration of the opinion of the court of appeals, the Court will dismiss for failure to state a claim Plaintiff's retaliation claims based on the misconduct charges, his due process claim based on the destruction of his typewriter, and his equal protection claim. The Court will serve the remaining claims against all Defendants.

**Discussion**

I.  Background

   A.  **Factual allegations**

Plaintiff Wayne Earl LaFountain presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Kinross Correctional Facility, though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF), the Lakeland Correctional Facility (LCF), and the Michigan Reformatory (RMI). He sues MCF Warden Shirlee Harry, MCF Resident Unit Manager Brett J. Barbier, MCF Assistant Deputy Warden Sharon K. Wells-Finos, LCF Assistant Deputy Warden Dan Hawkins, Deputy Warden Bonita Hofner, LCF Captain (unknown) Cooley, and RMI Warden Carmen Palmer.

Plaintiff has been a frequent litigator in the federal system.[1] He filed a complaint in the Eastern District of Michigan in 2001, complaining about second-hand smoke, that ultimately was settled. *See LaFountain v. William Martin et al.*, No. 5:01-cv-60011 (E.D. Mich.) (Ord. of Dismissal July 11, 2006). Shortly thereafter, Plaintiff was transferred to the Kinross Correctional Facility. Plaintiff was transferred to MCF in September 2003, where he filed numerous grievances against corrections officer Anthony Martin before his transfer in December 22, 2005. In January 2005, Plaintiff initiated another action about second-hand smoke at the Kinross Correctional Facility. *See LaFountain v. Metrish et al.*, 2:05-cv-13 (W.D. Mich.) The 2005 case was settled within one month of the 2001 case. *See id.* (Ord. of Dismissal Aug. 4, 2006). Plaintiff asserts that the settlement agreement included an agreement that Plaintiff be transferred to LCF.

---

[1] Plaintiff has filed a total of sixteen cases in this Court and three cases in the Eastern District of Michigan. In the instant opinion, the Court limits its discussion of Plaintiff's prior litigation to the cases that Plaintiff alleges are relevant to the facts underlying the instant complaint.

Plaintiff was transferred to LCF in September 2006. He alleges that he was placed in a non-smoking room in a housing unit occupied by prisoners 50 years of age and older. According to Plaintiff, in January 2007, LCF Defendant Hawkins began to place young, primarily black, "contumacious" prisoners in the same unit. (Compl., ¶ 6, Page ID#8.) Plaintiff contends that the placements were made in retaliation for Plaintiff's filing of an action against MCF corrections officer Anthony Martin on January 25, 2007. *See LaFountain v. Anthony Martin*, No. 1:07-cv-76 (W.D. Mich.).[2][3] Plaintiff repeatedly complained to various LCF officials about problems with the new prisoners, including excessive noise and the use of bright lights until very late hours. Plaintiff eventually filed grievances against Defendants Hawkins, Hofner and Cooley in September 2007, alleging that Defendants had engaged in a practice of racially discriminatory enforcement of housing rules. On September 28, 2007, Defendants Hawkins and Hofner ordered that Plaintiff be transferred back to MCF. Plaintiff packed his property, including his typewriter, and unidentified third-shift officers took possession of it. Plaintiff complains that he did not receive his typewriter with the rest of his property and that, when the typewriter arrived, it was in pieces, which cost Plaintiff $280.00 to repair. Plaintiff alleges that Hawkins, Hofner and Cooley intentionally withheld the typewriter as an act of retaliation.

When he arrived at MCF on September 28, 2007, Plaintiff talked to Defendant Barbier, advising him that the transfer had been retaliatory and requesting transfer back to LCF. His request was denied. Plaintiff was placed in a cell with Jimmy Riley, a prisoner long known to

---

[2] Plaintiff's action against Anthony Martin remains pending in this Court, notwithstanding Martin's death on July 10, 2010.

[3] Shortly thereafter, Plaintiff filed a habeas corpus petition challenging a misconduct conviction that resulted in the loss of good-time credits. *See LaFountain v. Howes*, No. 1:07-cv-264 (W.D. Mich.). The action was dismissed on June 12, 2007, for failure to raise a meritorious federal claim. *See id.* (Mem. Op. & J. June 12, 2007).

Plaintiff and to others at MCF as being mentally ill. Plaintiff also was given a top bunk, though he purportedly had a permanent bottom-bunk accommodation that was issued in 1996 because of an ankle problem. Plaintiff alleges that Riley engaged in aberrant behavior: keeping cell lights on until 3:00 a.m.; playing the television at loud volume; typing and shuffling papers loudly; wearing a heavy, winter coat, wool hat and sunglasses at all times, shadow-boxing around the cell and in the showers; and making insults and threats to Plaintiff. Defendants Barbier and Wells-Finos denied Plaintiff's request for a cell move and indicated that the bottom-bunk accommodation would be honored only if an MCF doctor issued it. Plaintiff filed a grievance on October 2, 2007, alleging that his placement with prisoner Riley and his denial of a bottom bunk were retaliatory and the product of racially discriminatory selective rules enforcement.

On October 3, 2007, Riley threw Plaintiff's wash cloth into the wastebasket. Plaintiff was given an extra wash cloth. Riley continued to curse and threaten Plaintiff. That same date, Plaintiff informed corrections officer Hallowell that he intended to refuse to cell with Riley any longer. Plaintiff asked Hallowell to obtain permission from Defendant Barbier to have Plaintiff's property secured in the MCF property room. Barbier authorized that the property be secured, but issued Plaintiff a ticket containing two misconduct charges for being out of place and disobeying a direct order. Plaintiff took his property to the property room. As he walked back to the housing unit, officer Anthony Martin allegedly blocked his path and, when Plaintiff told Martin that Plaintiff intended to win his civil-rights action against Martin, Martin issued another misconduct charge for insolence, of which Plaintiff ultimately was found not guilty. When he arrived at his housing unit, Plaintiff refused to return to the cell with Riley. Defendants Barbier and Wells-Finos ordered that Plaintiff be placed in temporary segregation. During the eight days that he remained in temporary

segregation, Defendants Wells-Finos and Harry allegedly directed each shift officer to issue Plaintiff a direct order to return to his cell. When he refused, Plaintiff was issued another misconduct ticket. Plaintiff received a total of twelve misconduct tickets.

On October 8, 2007, a third-shift officer ordered that Plaintiff be placed in a bottom bunk in a cell other than that occupied by Riley. Plaintiff complied. However, twenty minutes later, a team of MCF officers arrived, hand-cuffed Plaintiff, and returned him to segregation until after the misconduct hearing had taken place. On October 7 and 9, 2007, Plaintiff was found guilty of the misconduct charges. As the result of the convictions, Defendant Harry revoked 500 days of Plaintiff's earned good-time credits, and, after Plaintiff arrived at RMI, Defendant Palmer revoked an additional 270 days. Plaintiff alleges that the revocations were disproportionate and that Defendants Harry and Palmer, as black females, engaged in racially discriminatory conduct.

Plaintiff was transferred to RMI on October 11, 2007. Plaintiff was transported with a black prisoner, Scott Bradley, who had refused to cell with another prisoner. Bradley, however, was not issued multiple misconduct tickets. Plaintiff alleges that Bradley's disparate treatment is evidence of Defendants' retaliatory and racially discriminatory selective enforcement of prison rules.

In addition, Plaintiff alleges that Defendant Barbier and the MCF hearings investigator Barbara Brinkman failed to provide the hearings officer with a copy of Plaintiff's bottom-bunk accommodation from 1996. Plaintiff also alleges that Brinkman failed to obtain answers to Plaintiff's interrogatories to various officers and prisoners. In addition, Plaintiff alleges that the hearing officer refused to consider his defenses of vindictive prosecution, selective enforcement, entrapment and duress.

Plaintiff claims that Defendants deprived him of due process at his misconduct hearings. He also alleges that Defendants Harry, Wells-Finos and Barbier used his placement in the cell with Riley to entrap him into violating a direct order and incurring multiple misconduct tickets, ostensibly in retaliation for the exercise of his First Amendment right to file a lawsuit and grievances and because he was white. Plaintiff contends that Defendants Harry and Palmer deprived him of his 770 days of good-time credits on the basis of the retaliatory and discriminatory misconducts, in violation of the First Amendment and the Equal Protection Clause.

For relief, Plaintiff seeks compensatory and punitive damages.

### B. Procedural History

On March 16, 2011, the Court dismissed the entire action for failure to state a claim. The Court held that Plaintiff's due process claim against Defendants Hawkins, Cooley and Hofner was barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). The Court also held that Plaintiff's retaliation claims against all Defendants based on the allegedly retaliatory misconduct tickets were barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, the Court dismissed Plaintiff's remaining retaliation and equal protection claims for failure to state a claim.

Plaintiff appealed the dismissal. In an opinion and judgment issued May 22, 2013, the Sixth Circuit affirmed this Court's dismissal of the retaliation claims based on the allegedly retaliatory misconduct charges and the retaliation claim against Defendants Hofner and Hawkins based on the destruction of his typewriter. The court also affirmed the Court's dismissal of Plaintiff's equal protection claim. The Sixth Circuit did not address this Court's dismissal of his *Parrett*-barred claim, which therefore left that part of the decision undisturbed. However, the Sixth

Circuit reversed this Court's dismissal of Plaintiffs retaliation claim based on his transfer from LCF to MCF. The Sixth Circuit also reversed this Court's dismissal of Plaintiff's retaliation claims against Defendants for placing him and keeping him in a cell with prisoner Riley, and his retaliation claim against Defendant Cooley for damaging his typewriter. In addition, the Sixth Circuit overruled its longstanding decision in *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), to the extent that it held that a prisoner could not amend his complaint to avoid dismissal. The court of appeals therefore remanded the case for further proceedings to conform with its decision and directed this Court to consider whether LaFountain should be permitted to amend his complaint with respect to any of the dismissed claims. *See LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013).

II.  Analysis

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party is permitted to amend its pleadings once as a matter of course within 15 days after serving it. *Id.* In all other cases, leave to amend should be freely given "when justice so requires." In *LaFountain*, the Sixth Circuit concluded that the right to amend under Rule 15 extends to prisoner plaintiffs. *Id.* at 951.

In the instant case, Plaintiff has filed no motion to amend his complaint to cure a defect in one or more of the claims deemed insufficient by this Court and the Sixth Circuit. Moreover, any attempt to amend his *Parratt* or *Heck*-barred claims would be futile. Given the wholly conclusory nature of Plaintiff's equal protection claim, it appears unlikely that Plaintiff could successfully amend his complaint at this time. At this juncture, therefore, the Court sees no basis for permitting amendment. Plaintiff remains free to seek amendment under Rule 15(a) at some future point in the litigation.

**Conclusion**

For the foregoing reasons, Plaintiff's equal protection claim, his due process claim involving his typewriter, his retaliation claim against Defendants Hawkins and Hofner based on the destruction of his typewriter, and his retaliation claim based on allegedly false miconduct charges will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the remainder of the complaint on all Defendants.

An Order consistent with this Opinion will be entered.


Dated:     August 12, 2013            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE