UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE EARL LAFOUNTAIN,

    Plaintiff,

Case No. 1:10-cv-943

Hon. Robert J. Jonker

vs.

SHIRLEE HARRY, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for partial summary judgment filed by defendants William Cooley, Shirlee Harry, Daniel Hawkins and Bonita Hoffner (docket no. 77).

**I.    Background**

This matter was dismissed on screening pursuant to 42 U.S.C. § 1997e(c). *See* Opinion (docket no. 5); Judgment (docket no. 6). Plaintiff appealed to the Sixth Circuit Court of Appeals, which reversed the judgment and remanded the matter. *See LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013). The Sixth Circuit summarized plaintiff's claim as follows:

> The facts set forth below are based solely on the allegations in LaFountain's complaint. *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir.2011). In 2006, the Michigan Department of Corrections agreed to house LaFountain at the Lakeland Correctional Facility in exchange for the dismissal of two lawsuits he had previously filed. LaFountain wanted the Department to house him at Lakeland so that he could receive family visits and avoid further retaliation from correctional officers at the Muskegon Correctional Facility, where he had been housed in the past. After he was transferred to Lakeland, LaFountain filed two grievances against three prison officials: Dan Hawkins, Bonita Hofner, and "third-shift Captain, Unknown Cooley." LaFountain alleged that these officials

selectively enforced housing-unit rules based on race. The day that LaFountain filed the second grievance, Hawkins and Hofner transferred him back to Muskegon.

In preparation for the transfer, Cooley directed LaFountain to pack up his personal property, including his typewriter. Officers working the prison's third shift then took possession of LaFountain's property. When LaFountain arrived at Muskegon, his typewriter was missing. So he filed another grievance, this time alleging that Hawkins, Hofner, and Cooley had retaliated against him by withholding the typewriter. LaFountain eventually got the typewriter back, but somebody had removed its screws and it was in pieces. LaFountain thereafter paid $280 to repair it.

When LaFountain arrived at Muskegon, Warden Shirlee Harry assigned him to a cell with Jimmy Riley, a mentally ill prisoner. Riley insulted and threatened LaFountain. Riley also kept LaFountain up at night by leaving the lights on and making excessive noise. LaFountain repeatedly asked the Muskegon Resident Unit Manager, Brett Barbier, and the Assistant Deputy Warden of Housing, Sharon Wells-Finos, to move him to a different cell, but to no avail. LaFountain filed a grievance against Harry, Barbier, and Wells-Finos, alleging that they housed him with Riley in retaliation for a grievance he had filed against Harry and a lawsuit he had filed against Anthony Martin, another Muskegon correctional officer. Riley eventually threatened LaFountain's life, after which LaFountain refused to remain in his cell with Riley. Barbier ordered another officer to cite LaFountain for being "out of place" and disobeying a direct order. Barbier and Wells-Finos also placed LaFountain in a temporary segregation cell, where he remained for eight days. During that time, per orders from Harry, Barbier, and Wells-Finos, each new shift of officers issued LaFountain a direct order to continue celling with Riley. Every time that Riley refused, the officers cited LaFountain for major misconduct. LaFountain was ultimately charged with 12 major-misconduct violations and found guilty of eight of them. As a sanction, Harry and defendant Carmen Palmer, another Muskegon warden, ordered LaFountain to forfeit 770 days of his good-time credits.

LaFountain filed this lawsuit against Hawkins, Hofner, Cooley, Harry, Barbier, Wells-Finos, and Palmer, alleging that they each retaliated against him in violation of the First and Fourteenth Amendments. Before serving the complaint on the defendants, however, the district court dismissed it with prejudice for failure to state a claim. The court held that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), barred the retaliation claim that was based on the misconduct charges. The court otherwise held that LaFountain's allegations did not support his claims. This appeal followed.

2

*LaFountain v. Harry*, 716 F.3d 944, 947-48 (6th Cir. 2013).  The Sixth Circuit resolved the appeal as follows:

> We reverse the district court's dismissal of the retaliation claims against Hofner and Hawkins for the transfer to Muskegon, against Cooley for the typewriter damage, and against Harry, Barbier, and Wells-Finos for the cell assignment with Riley.  We agree with the district court's reasoning as to the dismissal of the equal-protection claim as well as the retaliation claims against Hofner and Hawkins for the typewriter damage and against Harry, Barbier, Wells-Finos, and Palmer for the misconduct charges; but we vacate the court's dismissal of those claims solely so that the court can determine, in its discretion, whether to allow LaFountain to amend his complaint with respect to any of those claims.  The case is otherwise remanded for further proceedings consistent with this opinion.

*Id.* at 951.

On remand, plaintiff amended his complaint (docket no. 17) and the Court ordered partial service, dismissing plaintiff's claims against Defendant Carmen Palmer and his equal protection claim with prejudice. *See* Amended order for service (docket no. 18).  Plaintiff's amended complaint involves two counts.  In Count I, plaintiff alleged that defendants Bonita Hoffner (Deputy Warden at Lakeland Correctional Facility (LCF)), Dan Hawkins (Assistant Deputy Warden at LCF) and William Cooley (third-shift Captain at LCF) engaged in acts of retaliation in response to plaintiff's exercise of his First Amendment rights.  *See* Amend. Compl. (docket no. 17, PageID.123). Specifically, that Deputy Warden Hoffner and Assistant Deputy Warden Hawkins performed a retaliatory prison transfer in violation of "a prior settlement agreement" (*see id.* at PageID.106, 111), and that Capt. Cooley retaliated against plaintiff by destroying his typewriter (*see id.* at PageID.111-112).

In Count II, plaintiff alleged that defendants Shirlee Harry (Warden of the Muskegon Correctional Facility (MCF)), Sharon K. Wells-Finos (Assistant Deputy Warden of Housing at

MCF), and Brett Barbier (Resident Unit Manager (RUM) at MCF) engaged in acts of retaliation for plaintiff's exercise of his First Amendment rights: (1) by violating a medical order to have plaintiff placed in a bottom bunk; (2) ordering plaintiff to be placed in a top bunk with a mentally ill prisoner "for the purpose of creating the circumstances leading to either an inmate to inmate altercation or for creating such duress upon plaintiff so as to set plaintiff up for the commission of prison misconduct"; (3) "in denying plaintiff's repeated request for being either transferred to any other prison or for being moved to a different cell, thereby entrapping plaintiff within the cell with the mentally ill prisoner, [] which resulted in sleep deprivation for plaintiff, constant threats and insults form the mentally ill prisoner"; (4) "in denying plaintiff's bond status after plaintiff had refused to cell with the mentally ill prisoner"; (5) in maintaining plaintiff within a temporary detention cell "in order to stack direct orders upon plaintiff"; and (6) "after plaintiff had named the mentally ill prisoner as an enemy, defendants then caused plaintiff to be transferred to another prisoner as a level IV security prisoner, thus, resulting in heightened security classification as well as a severe and atypical deprivation of prison privileges and freedoms." *Id.* at PageID.123.

> **II.     Discussion**
>
> **A.     Defendants' motion for partial summary judgment**

The motion for partial summary judgment is brought by defendants Capt. Cooley, Assistant Deputy Warden Hawkins, Deputy Warden Hoffner and Warden Harry. Defendants RUM Barbier and Assistant Deputy Warden Wells-Finso do not seek summary judgment, conceding that there is a question of fact with respect to plaintiff's allegations against them. *See* Defendants' Brief (docket no. 78, PageID.597). In addressing defendants' motion, the Court is mindful that the Sixth Circuit's decision was based upon plaintiff's allegations in the context of initial screening under 28

U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B), and 42 U.S.C. § 1997e(c)(1). As the docket sheet reflects, there has been substantial discovery in this case since it was remanded in 2013.

### B.    Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

5

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### C. Plaintiff's retaliatory transfer claim against Assistant Deputy Warden Hawkins and Deputy Warden Hoffner

Plaintiff alleged that Assistant Deputy Warden Hawkins and Deputy Warden Hoffner retaliated against him by transferring him from LCF to MCF. A retaliation claim consists of three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants seek summary judgment because plaintiff's transfer to a different correctional facility was not an adverse action. Contrary to defendants' contention, the Sixth Circuit previously determined that plaintiff had stated a cause of action because the transfer violated the settlement agreement between plaintiff and the MDOC:

> As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse. *Smith v. Yarrow*, 78 Fed.Appx. 529, 543 (6th Cir.2003) (collecting cases).

> Absent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed. But this case is extraordinary, at least on the pleadings, because of the alleged settlement agreement. The complaint alleges that the transfer deprived LaFountain of the agreement's benefits because the transfer moved him farther away from his family and back into an environment in which he had already suffered retaliatory actions by prison officials. Whether LaFountain's transfer amounted to an adverse action for purposes of his retaliation claim, therefore, cannot be resolved at this stage. *See generally Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir.2002).

*LaFountain*, 716 F.3d at 948.

Defendants contend that the Sixth Circuit's opinion, which was based only on plaintiff's allegations in the original complaint, is inapplicable because "there has been extensive development of the facts" in this case. Defendants' Brief at PageID.597-599. While that is true, defendants have not developed any argument, or presented any facts, to demonstrate that the Sixth Circuit's decision no longer applies. Accordingly, defendant Hawkins and Hoffner's motion for summary judgment should be denied to the extent they assert that plaintiff's transfer to MCF was not an adverse action.

### D. Plaintiff's retaliation claim against Capt. Cooley for destruction of his typewriter

Capt. Cooley contends that he is entitled to summary judgment because plaintiff's claim against him is based on nothing more than a theory of *respondeat superior*. The Court agrees. At his deposition, plaintiff did not identify Capt. Cooley as the individual who damaged his typewriter:

Q. So is it your claim that Cooley himself damaged your typewriter?

A. Am I claiming Cooley himself damaged it?

Q. Is that your claim?

7

> A.   I did not identify exactly who damaged it.
>
> Q.   So your claim is that Cooley, people under Cooley's supervision damaged it? Is that it?
>
> A.   Under his supervision it was withheld and damaged, yes.

LaFountain Dep. (docket no. 78-2, PageID.609).

Capt. Cooley's only connection to the alleged damage to was that he supervised the shift when plaintiff packed up his property. *Id.* For his part, Capt. Cooley stated that he did not personally transfer plaintiff's property, did not instruct LCF personnel to damage, lose or mishandle plaintiff's property, and had no knowledge that any of plaintiff's property was being withheld. *See* William Cooley Aff. (docket no. 58-2, PageID.242-243). Based on this testimony, plaintiff's retaliation claim against Capt. Cooley for damaging the typewriter appears premised on a theory of *respondeat superior*, i.e., that it was destroyed by someone under Cooley's supervision. "A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996). Accordingly, defendant Cooley should be granted summary judgment.

> **E.   Plaintiff's retaliation claim against Warden Harry regarding the decision to house him with prisoner Riley**

In Count II, plaintiff alleged that defendant Warden Harry played a role in the decision to house him with prisoner Riley. In her motion, Warden Harry contends that plaintiff's claim "is based almost entirely on a theory of *respondeat superior*." Defendants' Brief at PageID.600. In support of this contention, Warden Harry stated in her affidavit that "[a]s Warden, I typically delegate decisions concerning the intra-facility housing, movement, and placement of

prisoners to other MDOC staff members." Shirlee Harry Aff. (docket no. 58-2, PageID.244). However, Warden Harry's affidavit did not address the extent of her personal involvement in this particular case.

Warden Harry also contends that plaintiff's claims that she would not allow him to come out of his segregation cell a MCF unless he roomed with prisoner Riley are based on hearsay. While Warden Harry does not quote the relevant testimony, *see* Defendants' Brief at PageID.600, she is apparently referring to the following which appears on page 44 of plaintiff's deposition:

> Well, when I first got there, I was placed in a cell with Jimmy Riley on the top cell. On the top bunk, excuse me. On 10-3, I refused to continue locking with him, and that was after I made several requests to be placed in another cell, and after that I was placed into temporary segregation cell [sic].
>
> On 10-8, third shift Officer Wood took me out of the temporary segregation cell and assigned me to another bottom bunk in another cell in which Jimmy Riley was not, and so I was in the process of making my bed when a team of control center officers came and told me that I could not be there. They handcuffed me escorted me back, told me that the warden, Shirlee Harry, was not allowing me to come out of there unless I was locked with Jimmy Riley on the top bunk.

LaFountain Dep. at PageID.611. This hearsay statement is insufficient to create a genuine issue of fact at trial on the extent of Warden Harry's personal involvement in plaintiff's with respect to requiring that plaintiff be placed with prisoner Riley. "A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Michigan Department of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002).

However, other facts suggest that Warden Harry had some knowledge of the situation. In his amended complaint, plaintiff alleged that "on 10/02/003 [sic], plaintiff sent a written communication to defendant Shirlee Harry in which plaintiff again requested that she, as MCF warden, either order plaintiff transferred from the MCF prison, to any other prison, or, at a minimum,

9

that defendant order plaintiff removed to either of two then available bottom bunks in different cells; within this communication, plaintiff reported to defendant Harry that she had previously ordered plaintiff's transfer from the MCF prison due to plaintiff's actions of naming her as respondent within several race-discrimination grievances." Amend. Compl. at PageID.116. Plaintiff is apparently referring to a letter addressed to Warden Harry. See  The letter in the record contains irregularities: it consists of page 1 dated "10/2/007" marked by plaintiff as Exhibit B-18 (docket no. 64-2, PageID.350, 370), an unnumbered page signed by plaintiff and marked as Exhibit B-19 (docket no. 64-2, PageID.371), and a document marked as "Page 2, MCF Grievance 10/02/007" signed by plaintiff and marked as Exhibit B-21 (docket no. 64-2, PageID.372). The latter document appears to begin mid sentence with the word "cord." *Id.* While these documents appear to contain inconsistencies, Warden Harry's motion did not address them.

Viewing the record in the light most favorable to plaintiff, the Court concludes that a genuine issue of material fact exists with respect to the extent of Warden Harry's involvement with plaintiff's placement. Accordingly, Warden Harry's motion for summary judgment should be denied.

### F.     Plaintiff's retaliatory transfer claim against Assistant Deputy Warden Hawkins

Assistant Deputy Warden Hawkins contends that he is entitled to summary judgment because he played no role in the decision to transfer plaintiff from LCF to MCF. The Court agrees. Defendants have presented two documents which relate to plaintiff's transfer: the Security Classification Screen Review (docket no. 58-3, PageID.254); and, the Transfer Order (docket no. 58-3, PageID.253). This record reflects that Jon Houtz prepared the Security Classification Screen for

plaintiff. Both documents appear to bear the signature of Deputy Warden Hoffner as approving the transfer. However, Assistant Deputy Warden Hawkins neither signed nor approved either document related to plaintiff's transfer. In order to state a valid First Amendment retaliation claim, plaintiff must show that Hawkins had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. There is no evidence that Assistant Deputy Warden Hawkins was the decisionmaker for plaintiff's transfer. Accordingly, Hawkins' motion for summary judgment should be granted on that claim.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for partial summary judgment (docket no. 77) be **GRANTED** as to defendants Assistant Deputy Warden Hawkins and Capt. Cooley, and that these two defendants be **DISMISSED** from this action.

I further recommend that defendants' motion be **DENIED** as to defendants Warden Harry and Deputy Warden Hoffner.


Dated:  September 13, 2016             /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).